IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-10262 smr** |
| **CHAPARRAL PROFESSIONAL** | § | |
| **LAND SURVEYING, INC** | § | **CHAPTER 11** |
| | § | **SUBCHAPTER V** |
| **DEBTOR** | § | |

**DEBTOR'S PLAN OF REORGANIZATION**
**DATED JUNE 28, 2024**

Kimberly Nash
P.O. Box 162932
Austin, Tx 78716
(512) 637-8000
(512) 886-2885 (facsimile)

Frank B. Lyon
Physical Address:
3800 N. Lamar - Suite 200
Austin, Texas 78756
Mailing Address:
Post Office Box 50210
Austin, Texas  78763
(512) 345-8964
(512) 697-0047 (facsimile)

ATTORNEYS FOR
CHAPARRAL    PROFESSIONAL    LAND
SURVEYING, INC.
DEBTOR-IN-POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 24-10262 smr** |
| **CHAPARRAL PROFESSIONAL** | § | |
| **LAND SURVEYING, INC** | § | **CHAPTER 11** |
| | § | **SUBCHAPTER V** |
| **DEBTOR** | § | |

### DEBTOR'S  PLAN OF REORGANIZATION
### DATED June 28, 2024

Chaparral Professional Land Surveying, Inc., Inc., the debtor herein (hereinafter referred to as the "Debtor") propose the following Plan of Reorganization ("Plan") Dated June 28, 2024, pursuant to Subchapter V of Chapter 11, Title 11, United States Code ("Bankruptcy Code" or "Code").

### ARTICLE I
### DEFINITIONS AND USE OF TERMS

1.01 **Defined Terms.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

1.02    **Supplemental Terms.**  The following supplement defined terms in the Code.

1.02(a) **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503 and entitled to administrative priority pursuant to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against either or both of the Debtor or his property under 28 U.S.C. § 1930, which arose after March 11, 2024.

1.02(b) **Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent or unliquidated, and to which no objection has been timely filed or, if filed, is allowed by a Final Order.

1.02(c)  **Allowed Secured Claim** means an Allowed Claim secured by a lien, security interest or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.02(d)   **Bankruptcy Court** means the United States Bankruptcy Court for the Western District of Texas, Austin Division, or such other Court that may have jurisdiction with respect to Debtor's case.

1.02(e)   **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's case.

1.02(f)   **Bar Date** means the date subsequent to which a proof of pre-petition Claim may not timely be filed or the date by which proofs of claims held by governmental agencies must be filed.  The Bar Date in this Case was May 20, 2024 for non-governmental units.

1.02(g)   **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

1.02(h)   **Case** means this Subchapter V Case.

1.02(i)   **Claimant** means any person or entity having or asserting a Claim in this case.

1.02(j)   **Class** or **Classes** mean all of the Claims that the Debtor has designated pursuant to 11 U.S.C. § 1190, as described in Article V of this Plan.

1.02(k)   **Confirmation** means the entry by the Bankruptcy Court of an order confirming this Plan.

1.02(l)   **Confirmation Date** means the date the Confirmation Order is entered.

1.02(m)  **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1191.

1.02(n)   **Debtor** means Chaparral Professional Land Surveying, Inc.

1.02(o)   **Disposable Income** means the Debtor's "disposable income" as measured under 11 U.S.C. § 1191(c).

1.02(p)   **Disputed Claim** means any Claim as to which the Debtor or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by Final Order.

1.02(q) **Effective Date** means the first Business Day after the Confirmation Order becomes a Final Order.

1.02(r)   **Estate** means the estate created pursuant to 11 U.S.C. §§ 541 and 1186 with respect to the Debtor.

1.02(s)  **Fee Claim** means a Claim under 11 U.S.C. § 330 or § 503 for allowance of compensation and reimbursement of expenses to professionals in this Case.

1.02(t)  **Filed** means delivered to the Clerk of the Bankruptcy Court or filed electronically with the Bankruptcy Court.

1.02(u)  **Final Order** means an Order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

1.02(v)  **Impaired** means the treatment of an Allowed Claim pursuant to the Plan *unless,* with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (i) cures any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstates the maturity of such Claim as such maturity existed before such default, (iii) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

1.02(w)  **Petition Date** means March 11, 2024, the date on which the Debtor filed this petition for relief in this Case.

1.02(x)  **Pre-petition** means prior to the Petition Date.

1.02(y)  **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

1.02(z)  **Pro-Rata** means proportionately, based on the percentage that the amount of a Claim is of the total of Allowed Claims in its Class.

1.02(aa)  **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

1.02(bb)  **Reorganized Debtor** means the Debtor after the Effective Date of the Plan.

1.02(cc)  The **Rules** means the Bankruptcy Rules.

1.02(dd) **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest, in property in which the Debtor has an interest to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

1.02(ee) **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

1.02(ff)  **Unsecured Claim** means any claim against the Estate that is not a Secured or Administrative Claim.

1.03(gg) **Gender.**  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context.  Words of any gender shall include each other gender where appropriate.

1.04 (hh) **Headings.**  The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05(ii) **Computation of Time.**  In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
## BASIS OF PLAN

2.01  **Generally.**  The Plan is a plan of reorganization.  Funding for the Plan will come from the Debtor's business operations.

## ARTICLE III
## HISTORY OF THE DEBTOR'S OPERATIONS

3.01  **History of the Debtor's Operations.**  The Debtor was organized as a Texas Corporation on December 29, 1997, and is in the business of mapping and surveying commercial property in the central Texas Area. In August of 2017, Kevin and Rudolf Pata (brothers) purchased Debtor.  The Pata's borrowed $1,901,500.00 from Bank United, N.A. to finance the purchase. In September of 2022, Kevin Pata bought out Rudolf Pata and is the sole owner with a subsequent loan from Comerica for $550,000.00.

The case was filed because of a decrease in demand for surveying due to increased interest rates. The Debtor borrowed from MCA lenders to pay expenses.  When Debtor defaulted on payments to the MCA lenders, they sent UCC-1 lien notices to Debtor's clients instructing the clients to pay balances directly to them. This prevented Debtor from collecting accounts receivable and forced Debtor to file for bankruptcy protection.

## ARTICLE IV
## PROVISIONS APPLICABLE TO ALL CLAIMS

4.01    **Treatment of Claims.**  This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a).  However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

4.02    **Allowed Claims**.  To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

4.03    **Amount of Claims**.  If the Debtor has scheduled a Claim and has not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled by the Debtor shall control, unless the holder of the Claim has timely filed a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim.  If a Creditor files a proof of claim, then the amount stated in the proof of claim shall control unless a party in interest files an objection to the Claim.  If a party in interest files an objection to a proof of claim or a scheduled Claim, then the amount determined by the Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

4.04    **Allowance of Post-Petition Interest, Fees and Costs**.  Unless otherwise provided, a Claim shall not be entitled to post-petition interest, fees or costs.

4.05    **Filing of Administrative Claims**.  Any requests for allowance of an Administrative Expense Claim shall be filed no later than sixty (60) days after the Effective Date or shall be barred.

4.06    **Filing of Requests for Post-Petition Fees or Costs**.  Any requests for allowance of post-petition fees or costs pursuant to 11 U.S.C. § 506(b) shall be filed no later than (60) days after the Effective Date or shall be barred.

4.07    **Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of a Pre-Petition Claim at any time prior to the later of sixty (60) days after the Effective Date or thirty (30) days after such Claim is filed. Any proof of claim filed after the applicable Bar Date set by the Court shall be of no force and effect and shall be deemed disallowed.

4.08    Any objection must comply with Local Bankruptcy Rule 3007, be in writing, set out the name of the Creditor who filed the Claim (and any assignee), the dollar amount of the Claim and the character of the Claim.  Each specific ground for objection or defense to the Claim shall be listed in a separate paragraph.  Service of the objection shall be made upon the attorney of record for the Claimant (or the Creditor directly if not represented by an attorney), the attorney for the Debtor, and any other party entitled to notice under Local Rule 3007.  A certificate of service shall be included in each objection and shall comply with Local Bankruptcy Rule 9013(f).

4.09    If an objection to a Claim is filed the holder of the Claim may file a response only within twenty-one (21) days from the mailing date set out in the certificate of service for the objection.  Responses may take one of two forms, namely a consent to the objection, or a non-consenting response.  A non-consenting response shall state specific reasons for objection to each ground or defense relied upon by the non-consenting party to support allowance of the Claim. Copies of such response shall be served upon the Debtor and his attorney, Frank Lyon.  Failure to timely file a response shall result in a deemed consent to the objection, and upon the expiration of the 21-day response period, the Court may enter an order without further notice or hearing.  In the event a timely non-consenting response is filed, the Court shall set a hearing.

4.10    All Contested Claims shall be litigated to Final Order; provided, however, that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court and further provided that if a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise.

4.11    **Distributions on Disputed Claims.**  If a Claim is not scheduled or is scheduled in the Debtor's Schedules of Liabilities as disputed, contingent or unliquidated, no distribution shall be made to the holder of such Claim unless a proof of claim was filed by:

(a)    May 20, 2024, which was the Bar Date for non-governmental units established by the Bankruptcy Court or,

(b)    by the date 45 days after the Confirmation Date, if such Claim is a Claim for either (i) damages for rejection at Confirmation of this Plan of an executory contract or (ii) a deficiency created after surrender of property under the Plan.

In addition, no distribution shall be made to the holder of a Claim so long as an objection to the Claim is pending; rather, the amount of the payment shall be held in reserve by the Debtor until the objection is resolved.  If an objection to a Claim in the General Unsecured Class is sustained, the Debtor will distribute the amount of the Claim *pro rata* to the holders of the remaining Claims in the class along with the next payment to that class, and shall re-calculate all future *pro rata* payments on each of the General Unsecured Class Claims remaining. If an objection is overruled, at the next scheduled distribution under the Plan to the Class of Creditors into which the Claim falls, the Debtor shall pay the newly Allowed Claim a sum sufficient to bring that Claimant *in pari passu* with the other Claims in the Class.

4.12    If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim. In addition, any party authorized by the Code may request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to 11 U.S.C. § 502(c) at any time.

## ARTICLE V
## ADMINISTRATIVE AND PRIORITY CREDITORS

5.01    **Administrative Expenses.** Each holder of an administrative expense claim allowed under § 503 of the Code shall be paid upon such terms as agreed upon between the Debtor and the holder of such claim. In the event of a non-consensual confirmation of this plan under Section 1191(b) of the Code, the respective administrative expense claims shall be paid in six (6) equal monthly installments beginning in month 1 of the Plan, except as noted below. In the event of a consensual confirmation under Section 1191(a) the Debtor proposes to pay such claims in six (6) equal installments, beginning in month 1 of the Plan, except as noted below. The holders of administrative expense claims are expected to be Kimberly Nash and Frank Lyon, counsel for the Debtor, and Brad Odell, the Subchapter V Trustee.

5.02    Allowed Administrative Claim of Sheryl Ogle for post-petition rent of $7,200.00 plus attorney fees shall be paid in 6 equal installments beginning on the effective date plus the regular monthly rental charges. Thereafter, payment shall be made in accordance with the terms of the lease.  Payments 1-6 are estimated to be $8,083.00.

## ARTICLE VI
## CLASSIFICATION OF CLAIMS AND INTERESTS

6.01    **Classification.** Claims and interests are classified as follows:

**Class 1.**    Allowed Secured Claim of Bank United, N.A.

**Class 2.**    Allowed Secured Claim of U.S. Bank Equipment Finance

**Class 3**    Allowed Priority Claims of employees of the Debtor for 401k contributions deducted from their wages but not paid to the plan administrator.

**Class 4**.    Allowed Priority Claims of employees of the Debtor for 401k match contributions not paid by the Debtor to the plan administrator.

**Class 5.**    Allowed Priority Claims for certain of Debtor's employees pre-petition wages.

**Class 6**    Administrative Convenience Claims, consisting of Allowed General Unsecured Claims of $3,000.00 or less, and Allowed General Unsecured Claims the holders of which each agree to reduce their Claim to the lesser of the Allowed Amount of the Claim or $3,000.00.

**Class 7**    Allowed General Unsecured Claims other than the Claims in Class 6.

**Class 8.**    Equity Interests in the Debtor.

6.02    **Claims Deemed Partially Secured and Partially Unsecured.** The Claims of the following parties shall be deemed partially Secured and partially Unsecured:

a)  Bank United, N.A. – Bank United, N.A. filed a UCC-1 financing statement and has first lien on virtually all of Debtor's assets. Bank United, N.A.'s lien of $1,088,875.37 exceeds the value of Debtors assets leaving Bank United, N.A. with a secured amount of $620,874.63 with the balance of its Claim being Unsecured.

6.03    **Claims Deemed General Unsecured.** Other than Classes 1 through 5, all other Claims shall be deemed General Unsecured as of Confirmation and included in either Class 6 or Class 7, as applicable. This includes, but is not limited to, the Claims of the following parties whose UCC-1 was filed after Bank United, N.A. filed its UCC-1.

a)  Comerica Bank
b)  Essential Funding
c)  Fenix Capital Funding LLC
d)  Fresh Funding Solutions
e)  Velocity Capital Group

## ARTICLE VII
## TREATMENT OF CLAIMS AND INTERESTS

### 7.01 **Priority Tax Claims**

| Proof of Claim Number | Creditor | Plan Amount | Claim Amount |
|---|---|---|---|
| 9 | Travis County-Business Property Tax | $8,954.12 | $16,878.13 |
| 7 | IRS WT-FICA | $388,571.66 | $388,571.66 |
| 7 | IRS-Corporate Tax | $8,223.05 | $8,223.05 |
| 12 | Comptroller of Public Accounts -Franchise Tax | $10,279.54 | $18,485.08 |
| 13 | Comptroller of Public Accounts- Sales Tax | $14,007.07 | $14,007.07 |
| 2 & 16 | Texas Workforce Commission | 8,534.21 | 8,534.21 |

Priority tax claims shall be paid in accordance with 11 USC 1129 (9)(c) and applicable state law. Assuming an Effective Date of September 1, 2024, there will be 54 payments in order to pay the claims in full within 60 months of the petition date.  In the event that the effective date is later than September 1, 2024, the number of payments will be adjusted so that the claims are paid in full within 60 months of the petition date. All statutory liens will remain in effect until the priority tax claims are paid in full.

7.02    -Allowed Secured Claim of Travis County, Texas. The Debtor shall pay the allowed Secured Claim of Travis County for the 2023 tax year in the amount of $8,954.12, including interest at a fixed rate of 12% per year beginning in f i f t y - f o u r (54) equal, consecutive monthly installments of $215.41, with the first payment to be made on the Effective Date.  The Reorganized Debtor may pre-pay the 2024 tax debt to Travis County at

any time.  Reorganized Debtor shall pay all post- petition ad valorem tax liabilities (tax year 2024 and subsequent tax years) owing to Travis County in the ordinary course of business as such tax debts come due and prior to said ad valorem taxes becoming delinquent under state law, without the need for Travis County to file administrative expense claim(s) and/or request(s) for payment.

Should the Reorganized Debtor fail to make any payments to Travis County as required in this confirmed Plan, Travis County shall provide written notice of that  default by email to Debtor's attorneys at kim@kimberlynashlaw.com and frank@franklyon.com of that default and providing the Reorganized Debtor with a period of fourteen (14) days from the date of the email to cure the default.  If the Reorganized Debtor does not cure the default within said fourteen (14) days, Travis County may, without further order of this Court or notice to the Reorganized Debtor, pursue all of its rights and remedies under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed. Additionally, should the Reorganized Debtor fail to timely pay post- petition taxes to Travis County while the Reorganized Debtor is still paying the pre- petition debt, Travis may, without further order of this court or notice to the Reorganized Debtor, pursue all of its rights and remedies under the Texas Property Tax Code to collect the full amount of all taxes, penalties and interest owed.  The Reorganized Debtor shall be entitled to no more than one (1) Notice of Default.  In the event of a second (2nd) default, Travis County may pursue all rights and remedies available under the Texas Property Tax Code in state district court without further order of this court or further notice to the Reorganized Debtor.

7.03     - Allowed Priority Claim of the IRS for pre-petition payroll taxes, estimated to be $388,571.66, which shall be paid with interest at a fixed rate of 8.0% per year from the Effective Date as follows: Beginning on the Effective Date, months 1-12 interest only (estimated to be $2,590.48); months 13-42 fully amortized in 42 equal monthly installments estimated to be $10,637.92 each in order to pay such claim within 60 months of the Petition Date..

7.04     - Allowed Priority Claim of the IRS for pre-petition corporate taxes, estimated to be $8,223.05, which shall be paid with interest at a fixed rate of 8.0% per year from the Effective Date as follows: Beginning on the Effective Date, months 1-12 interest only (estimated to be $54.82); months 13-42 fully amortized in 42 equal monthly installments estimated to be $255.12 each in order to pay such claim within 60 months of the Petition Date.

7.05     –Allowed Priority Claim of The Comptroller of Public Accounts for the 2023 Franchise tax in the amount of $8,205.54 and the estimated 2024 Franchise tax in the amount of $8,205.54.  Debtor shall pay the 2024 Franchise tax of in the ordinary course of business.  The 2023 Franchise tax shall be paid with interest at a fixed rate of 9.5% per year from the Effective Date as follows: Beginning on the Effective Date, months 1-54 fully amortized in 54 equal installments estimated to be $234.68 each in order to pay such claim within 60 months of the Petition Date.

A failure by the reorganized Debtor to make a payment to the Comptroller pursuant to the

terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claims, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Debtor: 5725 W. Hwy 290 Ste 103 Austin, Texas 78735; Attn Kevin Pata, and upon Debtor's attorney at: Frank B. Lyon, Attorney, P.O. Box 50210, Austin, TX 78763, Attn: Frank B. Lyon, Esq.; frank@franklyon.com and Kim@kimberlynashlaw.com.

The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of its debt.

7.06 – Allowed Priority Claim of The Comptroller of Public Accounts for the sales tax. This claim is estimated to total $14,007.07 and shall be paid with interest at a fixed rate of 9.5% per year from the Effective Date as follows: Beginning on the Effective Date, months 1-54 fully amortized in 54 equal installments estimated to be $319.78 each in order to pay such claim within 60 months of the Petition Date.

A failure by the reorganized Debtor to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claims, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Debtor: 5725 W. Hwy 290 Ste 103 Austin, Texas 78735; Attn Kevin Pata, and upon Debtor's attorney at: Frank B. Lyon, Attorney, P.O. Box 50210, Austin, TX 78763, Attn: Frank B. Lyon, Esq.; frank@franklyon.com and Kim@kimberlynashlaw.com

The Debtor shall be allowed to cure up to two (2) defaults. Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of its debt.

7.07 – Allowed Priority Claim of The Workforce Commission. This claim is estimated to total $8,534.21and shall be paid with interest at a fixed rate of 9.5% per year from the Effective Date as follows: Beginning on the Effective Date, months 1-54 fully amortized in 54 equal installments estimated to be $194.84 each in order to pay such claim within 60 months of the Petition Date.

7.08 **Class 1** - Allowed Secured Claim of Bank United, N.A., estimated to be $620,874.63 which shall be paid with interest at a fixed rate of 8.5% per year from the Effective Date as follows: Beginning on the Effective Date, months 1-6 interest only (estimated to be $4,397.86); months 7-60 fully amortized in 54 equal monthly installments estimated to be $13,876.63 each. Class 1 is impaired.

A failure by the reorganized Debtor to make a payment to Bank United, N.A.  pursuant to the terms of the Plan shall be an Event of Default. If the reorganized Debtor fails to cure an Event of Default within ten (10) calendar days after service of written notice of default from the Bank United, N.A., Bank United, N.A. can file a Motion to Covert the case and request an Expedited Hearing. Debtor will not oppose an expedited hearing. Notice of default shall be served by first class mail upon Debtor: 5725 W. Hwy 290 Ste 103 Austin, Texas 78735; Attn Kevin Pata, and upon Debtor's attorney at: Frank B. Lyon, Attorney, P.O. Box 50210, Austin, TX 78763, Attn: Frank B. Lyon, Esq.; frank@franklyon.com and Kim@kimberlynashlaw.com

The Debtor shall be allowed to cure up to three (3) defaults. Upon a fourth default, Bank United, N.A. may pursue applicable state law remedies without further order of this court.

7.09   **Class 2** - Allowed Secured Claim of U.S. Bank Equipment Finance, estimated to be $28,293.00, which shall be paid with interest at a fixed rate of 6.0% per year from the Effective Date as follows: Beginning on the Effective Date, months 1-60 fully amortized in 60 equal monthly installments estimated to be $586.61 each. Class 2 is impaired.

7.10   **Class 3. -** Allowed Priority Claims of employees of the Debtor for 401k contributions deducted from pre-petition wages but not paid to the administrator. These Claims, estimated to total $18,959.81, shall be paid in twelve equal monthly installments beginning on the Effective Date. See Exhibit B for a list of the members of Class 3 and a breakout of payments to each member of Class3. Class 3 is impaired.

7.11   **Class 4. -** Allowed Priority Claims of employees of the Debtor for 401k match contributions not paid to the administrator. These Claims, estimated to total $11,481.33, shall be paid in 12 equal monthly installments beginning on the Effective Date. See Exhibit B for a list of the members of Class 4 and a breakout of payments to each member of Class4. Class 4 is impaired.

7.12   **Class 5** - Allowed Priority Claims for certain of Debtor's employees pre-petition wages. These Claims, estimated to total $17,738.17, shall be paid in twelve equal monthly installments beginning month 7 of the Plan. See Exhibit B for a list of the members of Class 5 and a breakout of payments to each member of Class5. Class 5 is impaired.

7.13   **Class 6 Claims -** Allowed Administrative Convenience Claims, consisting of Allowed General Unsecured Claims of $3,000.00 or less, and Allowed General Unsecured Claims the holders of which each agree to reduce their Claim to $3,000.00.  Each holder of an Allowed Unsecured Claim of $3,000.00 or less shall be given the option to be treated as Class 7 creditor or to be paid the lesser of $300.00 or the Allowed Amount of such Claim in cash on the Effective Date.  Any holder of an Allowed Class 7 Claim of $3,000.00 or more may opt into Class 6 and shall be deemed to have not only agreed to reduce the Claim as scheduled or filed to an Allowed Claim of $3,000.00, but also to be paid as a Class 6 Claim on the Effective Date and to accept such payment in full satisfaction of its Claim. Class 6 is Impaired.

7.14    **Class 7 Claims** – All Other General Unsecured Claims.  All Allowed Class 7 Claims, which shall not accrue interest, shall be given the option to be treated as a Class 6 Claim in the Allowed Amount of $3,000.00 or to be paid monthly *pro rata* from the Debtor's Disposable Income beginning in 49 the Plan. Class 7claims are estimated to receive approximately 4.34% of the Allowed Amounts of their Claims over the life of the Plan. Class 7 is Impaired.

7.15    **Class 8** – Equity Interests in the Debtor.  The owners of the equity interests in the Debtor shall maintain their equity interests; however, no payments shall be made to the owners of the equity interests in the Debtor on account of such equity interests over the 60 months of the Plan. Class 8 is Impaired.

7.16    Please refer to Exhibit B for the Chart of Claims and Scheduled Payments for each Class. Where there is a difference between a scheduled amount and the amount of proof of claim, the projections assume that the objection to the claim was sustained.

### ARTICLE VIII
### IMPLEMENTATION OF THE PLAN

8.01    **Implementation of the Plan.**  The Debtor will continue to operate its business, and the income from the business will be used to fund the Plan.

8.02    **Reserve.**  One reason the Debtor filed this case was due to cash flow problems, rendering the Debtor unable to meet ongoing expenses. In order to avoid a recurrence of such a situation and to help make the plan feasible, the Plan calls for the establishment and maintenance of a reserve of up to $57,048.78 as shown in Exhibit A.

As a practical matter, the Debtor cannot distribute all of its net income every month. For example, assume that the Debtor's net income is $10,000 in a given month after payment of all of its ordinary operating expenses such as payroll, payroll taxes, purchase of materials, insurance, rent, payments to administrative claimants, payments to Classes 1 through 7 Creditors and all of the other ordinary expenses that an entity in the Debtor's business must pay to operate that are due in that month. The Debtor pays its employees and subcontractors in arrears every Friday. If the Debtor distributes all $10,000.00 of its net income at the end of a month – leaving no cash in the bank – the Debtor will have between one and six days (depending on when the end of the month falls) to collect enough funds to cover its usual weekly payroll, payroll taxes, rent and all of the other expenses that come due that week. It was a cash flow crunch that caused the Debtor to take out merchant advance loans, which in turn created another cash flow crunch. Requiring the Debtor to empty its bank accounts at the end of every month would re-create the same scenario that put the Debtor in this case. The reserve will give the Debtor the cash cushion that it needs in order to not only operate, but to fulfill its obligations under this Plan.

If the Debtor must dip into its reserve to pay its ordinary operating expenses, the payments due to administrative claimants or the payments due to Classes 1 through 7, the Debtor may recoup the amount needed to restore the reserve to $$57,048.78 when calculating Disposable Income for the next month.

Note that this is a 60 month plan rather than a 36 month plan. Extension of the Plan term to 60 months allows the Debtor to compensate for the accumulation of the reserve.

8.02     **In General.**  If the Plan is approved by the Court, a Confirmation Order will be entered.  The Debtor will continue to operate as debtor-in-possession and discharge its duties under the Code until the Effective Date of the Plan.  Upon the Effective Date of the Plan, the Reorganized Debtor will continue to operate for the benefit of its Creditors in compliance with the terms of the confirmed Plan.

8.03     **Authorization.**  The Debtor shall be responsible for complying with the terms and provisions of the Plan as it may be modified as allowed by the Bankruptcy Code.  To this end, the Debtor is authorized and directed to execute all documents necessary to effectuate the terms of the Plan.

8.04     **Reliance on other Parties.**  In connection with the Plan, the Debtor may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by it and such reliance shall presumptively establish good faith.

8.05     **Projections.**  The projections attached as Exhibit A are just projections. Actual revenue (collections) will be used to calculate Disposable Income for purposes of determining the amounts to be distributed to 7. The Debtor believes that revenue will return to the levels projected in Exhibit A because the Debtor has obtained new clients since this case has been filed that should replace the revenue lost to lost clients.

### ARTICLE IX
### EFFECT OF CONFIRMATION

9.01     **Plan Binding Pursuant** to 11 U.S.C. §§ 1141 and 1191, the provisions of the confirmed Plan shall bind the Debtor and each of the Creditors, whether or not the Creditor's Claim is impaired under the Plan and whether or not such Creditor has accepted the Plan.  The distributions provided for Creditors shall not be subject to any claim by another Creditor by reason of any assertion of a contractual right of subordination.

9.02     **Status of Property upon Confirmation**. Property of the Estate shall vest in the Debtor following Confirmation if the Plan is confirmed as a consensual plan. If the Plan is confirmed as a non-consensual plan under 11 U.S.C. §1191(b), all Property of the Estate shall remain property of the estate and shall not re-vest in the Debtor until the Plan has been fully performed.

9.03     **Automatic Stay Continues after Confirmation**. The automatic stay imposed under §362 of the Bankruptcy Code shall continue, after Confirmation until the earliest of discharge of the Debtor, or dismissal or closing of the Case, to prevent Creditor collection efforts other than as provided in the Plan.

9.04     **Treatment of Unexpired Leases and Executory Contracts.**  Confirmation of the Plan shall act as the assumption by the Debtor of any unexpired leases and executory

contracts to which it is a party. Pursuant to 11 U.S.C §365(d)(3), the debtor shall timely perform all obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property until the plan is confirmed. The debtor's obligations pursuant to §365(d)(3) shall survive confirmation of the plan and the other party to such assumed lease of nonresidential real property may enforce those obligations of the debtor post-confirmation of the plan pursuant to the terms of the assumed lease and Texas law **The deadline for filing a Claim resulting from a rejection of a contract or lease shall be forty-five (45) days after the Confirmation Date.**

9.05    **Release of Liens of Unsecured Creditors.** Confirmation of the Plan shall be a determination that all Claims described in Section 6.03 (3) are Unsecured and that all liens claimed by such creditors are released. The Debtor shall be authorized to execute and file with the appropriate authority releases of any and all such liens upon confirmation.

9.06    **Liens of Classes 1 through 2.** The liens of Bank United, N.A. (Class 1) and U.S. Bank Equipment Finance (Class 2) shall remain in full force and effect upon Confirmation but shall be deemed released upon the Debtor's payment of the amounts provided in Sections 7.08 through 7.09, respectively. The Debtor shall be authorized to execute and file with the appropriate authorities releases of such liens upon payment of the amounts provided for in Section 7.08 through 7.09.

## ARTICLE X
## CONFIRMATION UNDER §1191 (b)

10.01    **Disbursing Agent.** Provided that the Plan is confirmed as "consensual" under 11 U.S.C. §1191(a), the Reorganized Debtor shall be the disbursing agent under the Plan. If the Plan is confirmed as "non-consensual" under 11 U.S.C. §1191(b) because there are one or more Classes of Claims that do not accept the Plan because they fail to vote rather than because they vote to reject the Plan, the Debtors intend to ask the Court to allow the Reorganized Debtor to be the disbursing agent under the Plan.

10.02    If the Plan is confirmed under §1191 (b) as a non-consensual plan and the SubV Trustee is required to act as the disbursing agent he/she shall have the following duties.

a) Sub V Trustee Duties Post Confirmation: The Sub V Trustee shall acts as disbursing agent.

b) During the payment period, the Sub V Trustee shall make all payments of distributions to creditors from the Plan payments other than post-petition cured monthly mortgage payments. Such remittances shall occur no less frequently than fifteen (15) days after the first day of each month following receipt of a Plan payment from the Reorganized Debtor following finalization of claims objections. The Sub V Trustee shall make such distributions out from an account to be established by the Sub V Trustee at an institution on the approved U.S. Trustee

depository list account, which shall be maintained by the **Sub V** Trustee for the duration of the payment period until Plan consummation following the final payment required under the Plan (the "**Sub V** Trustee Account").

c) Disbursements to Allowed Claimants. As soon as is reasonably practicable after the Effective Date and following claims objections resolutions, the **Sub V** Trustee shall initiate disbursement of Plan payments from the **Sub V** Trustee Account, less amounts reserved for the **Sub V** Trustee's fees and expenses, to the holders of Allowed Claims in the provisions provided under the confirmed Plan, on a pro rata basis based on the total amount of Allowed Claims. For the avoidance of doubt, the disbursement to holders of Allowed Claims will be reduced in an amount equal to the **Sub V** Trustee's fees and costs incurred as **Sub V** Trustee and allowed in accordance with subparagraph (k) herein. The Reorganized Debtor shall provide a list of claims, including Allowed Claims and disputed claims to the **Sub V** Trustee on or about the same time when funds are delivered directing the **Sub V** Trustee which claims are "allowed claims" entitled to distribution, which claims are unresolved requiring the **Sub V** Trustee to withhold funds as required in subparagraph (e) herein and which claims constitute disallowed claims entitled to no distribution. The Reorganized Debtor shall file any claim objection within 30 days after the Effective Date – and confirm all Allowed Claims to be paid under the Plan.

d) Addresses for Disbursements. Disbursements shall occur by check drawn on the Trustee Account and may be delivered by the **Sub V** Trustee to (i) the address for payment set forth on a proof of claim filed by the Holder or its authorized agent, (ii) at the address set forth in any written notices of change of address delivered to the **Sub V** Trustee at, or (iii) if the Holder has not filed a proof of claim or otherwise provided the Trustee with notice of its address, in the address set forth in the applicable schedule filed by the Reorganized Debtor in this case. If any distribution to a Holder of an Allowed Unsecured Claim is returned to the **Sub V** Trustee as undeliverable, no further distributions shall be made to such Holder unless and until the **Sub V** Trustee is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder as soon as practicable. Undeliverable distributions shall remain in the possession of the **Sub V** Trustee until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends or other accruals of any kind. If, despite reasonable effort, the **Sub V** Trustee is unable to obtain the information necessary to deliver a distribution within six months following the return of the undeliverable distribution, the **Sub V** Trustee shall be authorized to treat such Holder's current and future claims as an Unclaimed Distribution (defined below).

e) No Fractional Disbursements. Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual

payment made will reflect a rounding down of such fractions. Further, if the actual monthly distribution claim as allowed claim is less than $100.00 no payment to a creditor shall occur unless the distribution in excess of $100.00 on or before the next annual payment date following the Effective Date.

f) Time Bar to Cash Distributions. Holders of Allowed Claims shall have 120 days from the date of issuance to negotiate a check issued by the Sub V Trustee on account of distribution. If a Holder fails to negotiate a disbursement check within this 120-day period, the Trustee shall have the right to void the check, and any current and future claims of such Holder to the Dividend shall be treated as an Unclaimed Distribution (defined below).

g) Unclaimed Distributions and Reversion. Any distribution made by the Sub V Trustee to a Holder of an Allowed Claim under this paragraph that is undeliverable for more than six months for lack of address, cannot be made on account of such Holder's failure to comply with the Withholding Requirements set forth in subparagraph (e) above, or has not been negotiated within 120 days from the date of issuance on the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property under section 347(d) of the Bankruptcy Code and shall revest with the Reorganized Debtor and held by the Sub V Trustee within the Sub V Trustee Account. The Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. Unclaimed Distributions shall be distributed by the Sub V Trustee to the remaining Holders of Allowed Claims, which distribution shall be effectuated through the subsequent distributions provided for under the Plan as if the Claim underlying such Unclaimed Distribution had been disallowed.

h) No Liability. Following entry of the Confirmation Order, any disbursements made by the Trustee on account of a Claim are deemed authorized disbursements, and the Sub V Trustee shall have no liability for these disbursements. The Sub V Trustee's obligations are limited to acting as the disbursement agent under the Plan, and the Sub V Trustee shall have no liability to any person in the event that the Reorganized Debtor fails to timely deliver payments to the Sub V Trustee, or otherwise fails to perform its obligations under the Plan. The Sub V Trustee shall have no obligation to disburse Dividend Payments unless and until he determines that there are adequate funds in the Sub V Trustee Account to cover a distribution to Holders, net of the Sub V Trustee's fees and costs. The Sub V Trustee shall not have any obligations to pursue and/or manage the Reorganized Debtor's pursuit of Causes of Action.

i) Reporting. The Sub V Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Sub V Trustee shall file his final report and seek a discharge of his duties as Sub V Trustee.

j) Notices. The Sub V Trustee may limit notice of any and all reports, documents, pleadings or other filings related to this case to those parties directly affected and to those interested parties which have filed a notice of appearance or proofs of claim, as necessary. The Sub V Trustee shall be under no obligation to serve parties which are neither affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court.

k) Post-Confirmation Fees and Expenses of the Sub V Trustee. The Sub V Trustee shall be entitled to recoup reasonable fees and costs incurred performing his obligations as Sub V Trustee under this paragraph from the Plan Payments of $400 per month for post confirmation administration of plan obligations, and in addition thereto, shall be entitled to reasonable attorney's fees in the event of that other non-administrative post-confirmation attorney services are required. The Sub V Trustee shall submit a fee and expenses statement to the Reorganized Debtor, the Office of the United States Trustee, and Holders of Allowed Claims (the "Notice Parties"). The Sub V Trustee shall be compensated for his non-administrative post confirmation duties at his normal hourly rate and shall be paid from the amounts paid by the Debtor for Plan Payments. The amount distributed or reserved to creditors will be net of the amounts remitted by the Reorganized Debtor to the Sub V Trustee. The Sub V Trustee's fees and expense shall be disclosed in the reports filed with the Court. All parties in interest will have 21 days after the reports are filed to object to the Sub V Trustee's fees and expenses disclosed therein. If no objection is received, the Sub V Trustee may disburse his fees and expenses from the Plan Payments without further order of the Court.

l) Debtor may engage post-confirmation counsel who shall be entitled to reasonable fees and expenses to be paid out of plan proceeds, following compliance with proceedings set forth in ¶ k above and in addition, post confirmation counsel for Debtor is required delivery to the Trustee, a true and correct copy of all post confirmation fee and expense statements, if confirmed under § 1191(b).

m) Distributions by the Sub V Trustee on Disputed Claims. Except as otherwise provided in the Plan, no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Holder who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Unsecured Claims which are not disputed. Until a disputed claim is resolved, payment distributions to claimants holding disputed

claims will be retained by the Sub V Trustee subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claim the Sub V Trustee will distribute withheld funds within the next payment period. If the Disputed Claim is disallowed, the Sub V Trustee will make withheld funds available to allowed claim holders within the next payment period.

n) In the event that the Reorganized Debtor is to make payments to creditors under the Plan, the Plan and not the Sub V Trustee as provided under 11 U.S.C. § 1194(b), Debtor should provide monthly reports to the Trustee confirming Plan payments.

o) Additional Post-Confirmation Duties of the Sub V Trustee. In addition to the duties set forth above and as set forth under 11 U.S.C. § 1183, duties and power of the Sub V Trustee should include those relating to:

   i. The right to appear and be heard in any post-confirmation hearing in relation to any issue arising within the post confirmation affairs of the reorganized Debtor;
   ii. Right to acquire required bonding, which costs are to be satisfied out of Debtor's Plan Payments under 11 U.S.C. §1191(d);
   iii. Right to take all steps necessary to ascertain allowed claim amounts, to prepare and issue claims recommendations and to obtain court determinations on amounts of allowed claims and distributions;
   iv. Right to review post-confirmation accounting and bank statements and accounting records; and,

## ARTICLE XI
## LIQUIDATION ANALYSIS

   11.01   The Code requires that the Plan provide a liquidation analysis so that creditors can compare what they would receive under the Plan versus a hypothetical liquidation of the Debtor's assets under Chapter 7 of the Code. The Debtor estimates that a liquidation of the Debtor's assets would result in the following:

| Assets | Value | At Liquidation | % of Value at Liquidation |
|---|---|---|---|
| Estimated Cash on Hand | $635.93 | $635.93 | 100% |
| Furniture, Fixtures, and Equipment* | $446,761 | $223,380 | 50% |
| Accounts Receivable* | $173,476.31 | $156,128.67 | 90% |
| Total | $620,874.63 | $124,174.92 | 66% |

*Subject to first lien of Bank United, N.A.

| Secured Claims | Amount |
|---|---|

| | |
|---|---|
| Bank United N.A. | $1,088,875.37 |
| Travis County | $16,878.13 |
| U.S. Bank Equipment Finance | $30,342.60 |
| Total Secured | $1,136,096.10 |

| Priority Claims | Amount |
|---|---|
| Employee 401k contribution, employer match, and pre petition wages (See Exhibit B) | $48,179.31 |
| IRS Pre-petition payroll taxes | $388,571.66 |
| IRS corporate tax | $8,223.05 |
| Comptroller of Public Accounts franchise tax | $18,485.08 |
| Comptroller of Public Accounts sales tax | $14,007.07 |
| Texas Workforce Commission | $8,534.21 |
| Total | $486,000.38 |
| | |
| Total Secured and Priority | $1,622,096.48 |

| Estimated Assets to Distribute to Unsecured Creditors | |
|---|---|
| Cash | $0.00 |
| Total Assets to Distribute to Unsecured Creditors | $0.00 |
| Gross Available | $0.00 |
| Less Chapter 7 Fee | |
| 25% of first $5,000.00 | $0.00 |
| 10% of ($10,000-$5,000) | $0.00 |
| Estimated Chapter Trustee Expenses Including attorney fees and accountant | $0.00 |
| Auction Fee 10% Furniture, Fixtures and Equipment | $0.00 |
| Net Amount Available for Unsecured Creditors | $0.00 |

Estimated Unsecured Claims (including deficiency claims):

Total Unsecured Claims             $2,181,491.11

Debtor does not dispute these claims.

**Estimated distribution to unsecured creditors:**
Net Available for Unsecured Creditors:
  $0.00 / Total Unsecured Claims of $2,181,491.11= 0.0%

## ARTICLE XII

## PROJECTIONS

12.01 Attached hereto as Exhibit A are the Debtor's projections with respect to the ability of the Debtor to make payments under the Plan.

## ARTICLE XIII
## DISCHARGE

13.01  If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt that arose before Confirmation, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

    i.    Imposed by this plan
    ii.   To the extent provided in § 1141(d)(6).

13.02  If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

    i.    On which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or
    ii.   Excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE XIV
## RETENTION OF JURISDICTION

14.01  After confirmation, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the confirmation, to hear and determine all causes of action that exist in the favor of the Debtor that arise prior to the confirmation, to hear and determine all matters relating to the administration of the Debtor's Estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with the Code, including interpretation and implementation of the Plan.

## ARTICLE XV
## DEFAULT AND OTHER RELATED PROVISIONS

15.01  **General.**       In the event of a default by the Debtor under the Plan, creditors may exercise any rights granted to them under documents executed to evidence the Plan or any right available to creditors under applicable non bankruptcy law.  In the absence of documents executed to evidence the Plan, this Plan may be enforced as a contract.  Notwithstanding any other provision, any creditor alleging a default shall give the Debtor thirty (30) days notice and an opportunity to cure before exercising any rights available upon default.

15.02   In the event of a default by a creditor, Debtor may enforce this plan as a contract in a court of competent jurisdiction.  The Debtor may escrow payments to any creditor which defaults under the Plan until the default is cured.  The Debtor shall give the creditor thirty (30) days notice an opportunity to cure before exercising this provision.

15.03   Conversion to Chapter 7 shall be an additional remedy for default prior to substantial consummation of the Plan.  The Debtor may voluntarily convert their case to one under Chapter 7 at anytime prior to discharge.

## ARTICLE XVI
## MISCELLANEOUS

16.01   **Request for Relief under 11 U.S.C. § 1191(b)**.  In the event any impaired Class fails to accept this Plan in accordance with 11 U.S.C. § 1191(a), the Debtor reserves the right to, and does hereby request the Court to, confirm the Plan in accordance with 11 U.S.C. § 1191(b).

16.02   **Voided Checks.**  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made to the Debtor's attorney, Frank B. Lyon, at PO Box 50210, Austin, Texas 78763, and by email to frank@franklyon.com, by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check must be made to the Debtor's attorney in writing within 180 days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Debtor.

16.03   **Governing Law.**  Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

DATED  June 28, 2024

Law Office of Kimberly Nash P.C.
Kimberly Nash
P.O. Box 162932
Austin, Tx 78716
(512) 637-8000
(512) 886-2885 (facsimile)
*/s/ Kimberly Nash*

LAW OFFICES OF FRANK B. LYON
Physical Address:

3800 North Lamar Boulevard, Suite 200
Austin, Texas 78756
<u>Mailing Address</u>:
Post Office Box 50210
Austin, Texas 78763
(512) 345-8964
(512) 697-0047 (fax)
Email:  frank@franklyon.com

By:  */s/ Frank B. Lyon*
FRANK B. LYON
State Bar No. 12739800
ATTORNEYS FOR DEBTOR

## <u>CERTIFICATE OF SERVICE</u>

I, Kimberly Nash, counsel for the Debtor in Possession, by my signature below, hereby certify that on the 28th of June 2024, a true and correct copy of the foregoing Plan of Reorganization was served via the Court's CM/ECF system to all parties requesting notice thereby and the attached matrix via first class U.S. mail.

<u>United States Trustee</u>
Shane Tobin
*By ECF notification*
shane.p.tobin@usdoj.gov

<u>Debtor</u>
Chaparral Professional Land Surveying, Inc.
Kevin Pata
5725 W. Hwy 290 Ste 103
Austin, Texas 78735
Kevin Pata kevin@chapsurvey.com
*By email*

Duane J. Brescia
Clark Hill PLC
720 Brazos, Suite 700
Austin, TX 78701
512.499.3647 (Direct)
512.499.3660 (Fax)
DBrescia@clarkhill.com
*by ECF notification*
Audrey L. Hornisher Clark Hill PLC
901 Main Street, Suite 6000
Dallas, Texas 75202
(214) 651-2056 (Direct)
(214) 659-4061 (Fax)
ahornisher@clarkhill.com

*by ECF notification*

Courtney J. Hull
Assistant Attorney General
Texas Attorney General's Office
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, TX 78711-2548
courtney.hull@oag.texas.gov
*by ECF notification*

C. Daniel Roberts C.
DANIEL ROBERTS, P.C.
PO Box 6368
Austin, Texas 78762
Telephone: (512) 494-8448
Email: droberts@cdrlaw.net
*by ECF notification*

Richard G. Dafoe
Waddell Serafino Geary Rechner Jenevein, PC
1717 Main Street, 25th floor
Dallas, Texas 75201
*by ECF notification*

Texas Comptroller of Public Accounts
Jamie Kirk
Bankruptcy Collection Div MC-008
PO Box 12548
Austin, Texas 78711
Jamie.Kirk@oag.texas.gov
*by ECF notification*

Sub V Trustee
Brad W. Odell
Mullin Hoard & Brown, LLP
1500 Broadway, Suite 700
Lubbock, Texas 79401
*By ECF Notification*

*   / s /  Kimberly Nash*
Kimberly Nash

Label Matrix for local noticing
0542-1
Case 24-10262-smr
Western District of Texas
Austin
Fri Jun 28 21:31:28 CDT 2024

Chaparral Professional Land Surveying, Inc.
5725 W. Hwy 290  Ste 202
Austin, TX 78735-8722

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

Alexander-Madison
10008 Hillside N
Austin, TX 78736-7617

American Express
Po Box 297800
Ft Lauderdale, FL 33329-7800

American Express
Po Box 6031
Carol Stream, IL 60197-6031

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

BankUnited
7815 Nw 148th St
Miami Lakes, FL 33016-1554

BankUnited, N.A.
c/o Audrey L. Hornisher
Clark Hill PLC
901 Main Street, Suite 6000
Dallas, Texas 75202-3748

BankUnited, N.A.
c/o Duane J. Brescia
Clark Hill PLC
3711 S. Mopac Expressway, Suite 500
Austin, TX 78746-8041

BankUnited, N.A.
c/o Duane J. Brescia
Clark Hill, PLC
720 Brazos, Suite 700
Austin, Texas 78701-2531

Beverding, Jerome
1505b Valleyridge Dr
Austin, TX 78704-6047

Briley, John
7333 Jaborandi Dr
Austin, TX 78739-1929

Carla Smith
810 Kemp Hills Dr
Austin, TX 78737-9670

Carlos A Ramirez
4514 Jinx Ave
Austin, TX 78745-1827

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Cheryl Ogle
c/o C. Daniel Roberts
C. Daniel Roberts, PC
PO Box 6368
Austin, Texas 78762-6368

Christina Papineau
1019 Hidden Hilld
Dripping Springs, TX 78620-3936

Christopher Hermosillo
9337 Sanford Dr
Austin, TX 78748-5071

Citibank N.A Diamond
Po Box 78045
Phoenix, AZ 85062-8045

Citibank N.A Simplicity
Po Box 78045
Phoenix, AZ 85062-8045

(p)CITY OF AUSTIN   AUSTIN ENERGY
ATTN COLLECTIONS DEPARTMENT
4815 MUELLER BLVD
AUSTIN TX 78723-3573

Clark Hill
901 Main Street 6000
Dallas, TX 75202-3748

Comerica Bank
Lesley Higginbothom
2 Riverway Ste 1300
Houston, TX 77056-2059

Comerica Bank, N.A.
c/o Richard Dafoe
1717 Main Street, Suite 2500
Dallas, Texas 75201-7341

Comptroller of Public Accounts
C/O Office of the Attorney General
Bankruptcy - Collections Division MC-008
PO Box 12548
Austin TX  78711-2548

Courtney J. Hull
Texas Attorney General's Office
Bankruptcy & Collections Div.
P.O. Box 12548
Austin, TX 78711-2548

Dearbonne M Edgar
965 Antioch Rd
Paige, TX 78659-4259

(p)DELL FINANCIAL SERVICES
P O BOX 81577
AUSTIN TX 78708-1577

Discover
Po Box 71242
Charlotte, NC 28272-1242

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

Eric J Schreffler
2506 Drew Ln
Austin, TX 78748-1360

Essential Funding
c/o Triton Recovery Group
3111 N University Dr Ste 604
Coral Springs, FL 33065-5060

Fenix Capital Funding, LLC
9265 4th Ave  2nd Floor
Brooklyn, NY 11209-7006

First Western Equipment Finance
100 Prairie Center Dr.
Eden Prairie, MN 55344-5452

First Western Equipment Finance
Po Box 2068
Minot, ND 58702-2068

Fresh Funding Solutions
157 Church St 19th
New Haven, CT 06510-2100

G4 Geometric
1019 E Nakoma St
San Antonio, TX 78216-2865

Greybar
Po Box 5066
Hartford, CT 06102-5066

Hermosillo, Richard
159 County Road 197
Mullin, TX 76864-2201

Humana
1100 Employers Blvd
Green Bay, WI 54344-0001

Internal Revenue Service
1100 Commerce St
MC 5026DAL
Dallas, TX 75242-1100

Internal Revenue Service
Centralized Insolvency Operation
PO Box 7346
Philadelphia, PA 19101-7346

James E Dinkins
7101 Dan-jean Dr
Austin, TX 78745-5345

Jarrod Staudt
109 Jay Jay Cove
Kyle, TX 78640-8812

Jerold W Cepress
209 Hitching Post Rd
Paige, TX 78659

Jerome Beverding
1505 B Valleyridge Drive
austin, TX 78704-6047

Kevin Pata
1019 Hidden Hills Dr
Dripping Spgs, TX 78620-3936

Kevin Pata
1019 Hidden Hills Dr. 78620-3936

LEAF Capital Funding LLC
2005 Market Street 14th FL
Philadelphia, PA 19103-7009

Mariott Bonvoy
Po Box 6294
Carol Stream, IL 60197-6294

Maxwell Nortman & Mirmonte
430 3rd Ave # 12
New York, NY 10016-8105

Melton Norcross
2591 Dallas Pkwy Ste 300
Frisco, TX 75034-8563

Move Corp
10300 Metric Blvd  150
Austin, TX 78758-4941

NetChex ? Payroll Liabilities
1155 N Highway 190 # 2
Covington, LA 70433-8963

Patrick Quiring
1127 Byers Ln
Austin, TX 78753-6896

Paul Flugel
6810 Lucy Cv
Austin, TX 78724-4330

Paul J Flugel
14910 Doria Dr
Austin, TX 78728-4458

Rudolf Pata
1145 Dancing Oak Ln
San Marcos, TX 78666-4505

Ryan C Salinas
2005 Brook Hollow
Cedar Park, TX 78613-6455

Samuel Staudt
109 Jay Jay Cv
Kyle, TX 78640-8812

Shanna M. Kaminski
P.O. Box 247
Grass Lake, MI 49240-0247

Sharon Ogle
3321 Bee Caves Rd
Austin, TX 78746-7066

Small Business Administration
2120 Riverfront Drive  100
Little Rock, AR 72202-1794

Small Business Administration
409 3rd St., SW
Washington, DC 20416-0002

TEXAS WORKFORCE COMMISSION
OFFICE OF ATTORNEY GENERAL
BK/COLLECTIONS
P.O. BOX 12548, MC008
AUSTIN, TX 787112548

Texas Comptroller of Public Accounts
Bankruptcy Collection Div MC-008
PO Box 12548
Austin, TX 78711-2548

Texas Comptroller of Public Accounts
Bankruptcy Collection Division MC-008
PO Box 12548
Austin, TX 78711-2548

Texas Workforce Commission
PO Box 782449
San Antonio, TX 78278-2449

The Leyvi Law Group P.C.
227 Sea Breeze Ave # 2a
Brooklyn, NY 11224-3794

Travis County c/o Jason A. Starks
P.O. Box 1748
Austin, Texas 78767-1748

(p)TRITON RECOVERY
19790 W DIXIE HIGHWAY
SUITE 301
MIAMI FL 33180-2293

Tyler James
108 Sailmaster
Austin, TX 78734-4153

US Attorney- Civil Process Clerk (IRS)
601 Nw Loop 410 Ste 600
San Antonio, TX 78216-5597

United States Trustee - AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

United States Trustee AU12
903 San Jacinto Blvd 230
Austin, TX 78701-2450

Velocity Capital Group, LLC
33 Pearsall Ave., Ste. 105
Cedarhurst, NY 11516

Velocity Captial Group
333 Pearshall Ave
Cedarhurst, NY 11516-1842

WEX Bank
Po Box 6293
Carol Stream, IL 60197-6293

Brad W. Odell
Mullin Hoard & Brown, LLP
1500 Broadway, Suite 700
Lubbock, TX 79401-3169

Frank B. Lyon
Frank B. Lyon, Attorney
PO Box 50210
Austin, TX 78763-0210

Kimberly L. Nash
Law Office of Kimberly Nash P.C.
P.O. Box 162932
Austin, TX 78716-2932

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Chase Card Services
Attn: Bankruptcy
PO Box 15298
Wilmington, DE 19850

City of Austin
Po Box 2267
Austin, TX 78783-2267

Dell Business
Po Box 5275
Carol Stream, IL 60197-5275

(d)Dell Financial Services, LLC
Resurgent Capital Services
PO Box 10390
Greenville, SC 29603-0390

Elan Financial Services
PO Box 108
Saint Louis, MO 63179

Triton Recovery
19790 W Dixie Hwy Ste 301
Miami, FL 33180-2293

End of Label Matrix
Mailable recipients    81
Bypassed recipients     0
Total                  81

Exhibit A

| | Month 1-6 YR1 | Months 7-12 YR1 | Months 13-24 YR2 | Months 25-36 YR3 | Months 37-48 YR4 | Months 49-54 YR5 | Months 55-60 YR5 | Total 60 Months |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | |
| Ordinary Income/Expense | | | | | | | | |
| Income | | | | | | | | |
| Interest Income | 14.35 | 14.35 | 14.35 | 14.35 | 14.35 | 14.35 | 14.35 | 861.00 |
| Invoice Deposit | 124,500.00 | 131,000.00 | 136,000.00 | 137,500.00 | 139,000.00 | 142,000.00 | 142,000.00 | 8,187,000.00 |
| Total Income | 124,514.35 | 131,014.35 | 136,014.35 | 137,514.35 | 139,014.35 | 142,014.35 | 142,014.35 | 8,187,861.00 |
| Gross Profit | 124,514.35 | 131,014.35 | 136,014.35 | 137,514.35 | 139,014.35 | 142,014.35 | 142,014.35 | 8,187,861.00 |
| Expense | | | | | | | | |
| Accounting Services | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Advertising | 1,145.94 | 1,145.94 | 1,145.94 | 1,168.86 | 1,192.24 | 1,216.08 | 1,216.08 | 70,428.67 |
| Bank Charges | 835.00 | 835.00 | 835.00 | 851.70 | 868.73 | 886.11 | 886.11 | 51,318.51 |
| Bank Service Charges | 5.00 | 5.00 | 5.00 | 5.10 | 5.20 | 5.31 | 5.31 | 307.30 |
| Building Security | 174.38 | 174.38 | 174.38 | 177.87 | 181.42 | 185.05 | 185.05 | 10,717.27 |
| Business & Auto Ins. | | | | | | | | 0.00 |
| Key Man Life Insurance/Owners | 911.94 | 911.94 | 911.94 | 930.18 | 948.78 | 967.76 | 967.76 | 56,047.19 |
| Business & Auto Ins. - Other | 5,000.00 | 5,000.00 | 5,000.00 | 5,100.00 | 5,202.00 | 5,306.04 | 5,306.04 | 307,296.48 |
| Total Business & Auto Ins. | 5,911.94 | 5,911.94 | 5,911.94 | 6,030.18 | 6,150.78 | 6,273.80 | 6,273.80 | 363,343.67 |
| Computer Expense IT | 100.00 | 100.00 | 100.00 | 102.00 | 104.04 | 106.12 | 106.12 | 6,145.93 |
| Deeds/Plats | 245.00 | 245.00 | 245.00 | 249.90 | 254.90 | 260.00 | 260.00 | 15,057.53 |
| Delivery | 22.00 | 22.00 | 22.00 | 22.44 | 22.89 | 23.35 | 23.35 | 1,352.10 |
| Drone Expense (Lidar Software) | 200.00 | 200.00 | 200.00 | 204.00 | 208.08 | 212.24 | 212.24 | 12,291.86 |
| Employee Development & CLE | 100.00 | 100.00 | 100.00 | 102.00 | 104.04 | 106.12 | 106.12 | 6,145.93 |
| Meals/Entertainment (weekly CLE Meeting) | 150.00 | 150.00 | 150.00 | 153.00 | 156.06 | 159.18 | 159.18 | 9,218.89 |
| Membership (Surveyor Licensing) | 800.00 | 800.00 | 800.00 | 816.00 | 832.32 | 848.97 | 848.97 | 49,167.44 |
| COBRA | 50.00 | 50.00 | 50.00 | 51.00 | 52.02 | 53.06 | 53.06 | 3,072.96 |
| Employee Health Insurance | 9,000.00 | 9,000.00 | 9,000.00 | 9,180.00 | 9,363.60 | 9,550.87 | 9,550.87 | 553,133.66 |
| Equipment Repair | 42.00 | 42.00 | 42.00 | 42.84 | 43.70 | 44.57 | 44.57 | 2,581.29 |
| Field Equipment License Expense $850 | 285.00 | 285.00 | 285.00 | 290.70 | 296.51 | 302.44 | 302.44 | 17,515.90 |
| Field Supplies | 1,472.70 | 1,472.70 | 1,472.70 | 1,502.15 | 1,532.20 | 1,562.84 | 1,562.84 | 90,511.11 |
| Gasoline | 2,182.71 | 2,182.71 | 2,182.71 | 2,226.36 | 2,270.89 | 2,316.31 | 2,316.31 | 134,147.82 |
| Mileage Reimbursement | 20.00 | 20.00 | 20.00 | 20.40 | 20.81 | 21.22 | 21.22 | 1,229.19 |
| Tolls & Parking | 188.00 | 188.00 | 188.00 | 191.76 | 195.60 | 199.51 | 199.51 | 11,554.35 |
| Interest Expense - Loans | | | | | | | | |
| Equipment Finance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Interest Expense - Loans - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Interest Expense - Loans | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Marketing | 504.00 | 504.00 | 504.00 | 514.08 | 524.36 | 534.85 | 534.85 | 30,975.49 |
| Website | 100.00 | 100.00 | 100.00 | 102.00 | 104.04 | 106.12 | 106.12 | 6,145.93 |
| Copier Repair and Supplies | 83.00 | 83.00 | 83.00 | 84.66 | 86.35 | 88.08 | 88.08 | 5,101.12 |
| **Franchise Tax | | 683.79 | 683.79 | 683.79 | 683.79 | 697.47 | 697.47 | 37,088.77 |
| **Property Tax | | 660.00 | 660.00 | 660.00 | 660.00 | 673.20 | 673.20 | 35,798.40 |
| Comptroller Sales Tax | 3,300.00 | 3,300.00 | 3,300.00 | 3,300.00 | 3,366.00 | 3,433.32 | 3,433.32 | 200,391.84 |
| Moving | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Office Equip. Lease | 414.41 | 414.41 | 414.41 | 422.70 | 431.15 | 439.78 | 439.78 | 25,469.35 |
| Office Phone and Mobile Phone Expense | 1,500.00 | 1,500.00 | 1,500.00 | 1,530.00 | 1,560.60 | 1,591.81 | 1,591.81 | 92,188.94 |
| Office Supplies | 500.00 | 500.00 | 500.00 | 510.00 | 520.20 | 530.60 | 530.60 | 30,729.65 |
| Postage | 70.00 | 70.00 | 70.00 | 71.40 | 72.83 | 74.28 | 74.28 | 4,302.15 |
| **Software Exp QuickBooks & AutoCAD pd annually | | 1,083.33 | 1,083.33 | 1,105.00 | 1,127.10 | 1,149.64 | 1,149.64 | 60,080.72 |
| Travel | 26.00 | 26.00 | 26.00 | 26.52 | 27.05 | 27.59 | 27.59 | 1,597.94 |
| Truck Repair | 250.00 | 250.00 | 250.00 | 255.00 | 260.10 | 265.30 | 265.30 | 15,364.82 |
| Truck Tags | 40.00 | 40.00 | 40.00 | 40.80 | 41.62 | 42.45 | 42.45 | 2,458.37 |
| Preservation of Collateral | 1,000.00 | 1,000.00 | 1,000.00 | 1,020.00 | 1,040.40 | 1,061.21 | 1,061.21 | 61,459.30 |
| Payroll Expenses | | | | | | | | |
| Gross Wages | 62,000.00 | 62,000.00 | 62,000.00 | 63,240.00 | 64,504.80 | 65,794.90 | 65,794.90 | 3,810,476.35 |
| Payroll Employer Taxes | 4,960.00 | 4,960.00 | 4,960.00 | 5,059.20 | 5,160.38 | 5,263.59 | 5,263.59 | 304,838.11 |
| Payroll Processing Fees | 301.92 | 301.92 | 301.92 | 307.96 | 314.12 | 320.40 | 320.40 | 18,555.79 |
| Total Payroll Expenses | 67,261.92 | 67,261.92 | 67,261.92 | 68,607.16 | 69,979.30 | 71,378.89 | 71,378.89 | 4,133,870.25 |
| Rent | 8,083.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 7,200.00 | 437,298.00 |
| Administrative Attorney Fees-Lyon & Nash | 6,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 36,000.00 |
| Secured Debt Payments | 5,199.88 | 14,678.65 | 14,678.65 | 14,678.65 | 14,678.65 | 14,678.65 | 14,678.65 | 823,846.38 |
| Priority Creditor Payments | 5,931.36 | 7,409.54 | 13,120.52 | 11,642.34 | 11,642.34 | 11,642.34 | 0.00 | 586,761.88 |
| Total Expense | 123,193.24 | 129,694.31 | 135,405.29 | 135,842.36 | 137,861.91 | 139,948.73 | 128,306.39 | 8,036,170.67 |
| Net Ordinary Income | 1,321.11 | 1,320.04 | 609.06 | 1,671.99 | 1,152.44 | 2,065.62 | 13,707.96 | 151,690.33 |
| Reserve Contribution | 1,321.11 | 1,320.04 | 609.06 | 1,671.99 | 1,152.44 | | | 57,048.78 |
| Payment to Unsecured Creditors | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,065.62 | 13,707.96 | 94,641.59 |
| Ending Cash | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | |

**Most Expenses increase 2% annually starting year 3

***Estimated Property and Franchise Tax

***Software AutoCAD and Quickbooks paid annually the end of the year.

Exhibit A

**Chart of Claims and Scheduled Payments**

**Secured and Priority Claims**

| Proof of Claim | Creditor | Type | POC Amount | Plan Amount | Interest | Treatment | Payments 1-6 [6] | Payments 7-12 | Payments 13-24 [12] | Payments 25-36 [12] | Payments 37-48 [12] | Payments 49-54 [6] | Payments 55-60 [6] | | Total Payments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | SECURED | | | | | | | | | | | | | | |
| 11 | Class 1 Bank United, N.A. | Secured | $1,088,875.37 | $620,874.63 | 8.5% | Pmts mo. 1-6 interest only. Pmts 7-60 fully amortized in 54 equal installments | $4,397.86 | $13,876.63 | $13,876.63 | $13,876.63 | $13,876.63 | $13,876.63 | $13,876.63 | | $775,725.18 |
| 15 | Class 2 U.S. Bank Equipment Finance | Secured | $30,342.60 | $30,342.60 | 6% | Pmts mo. 1-60 fully amortized in 60 equal installments | $586.61 | $586.61 | $586.61 | $586.61 | $586.61 | $586.61 | $586.61 | | $35,196.60 |
| 9 | Admin Travis County 2023 & estimated 2024. Paying 2023 | Secured | $16,878.13 | 8,954.12 | 12.0% | Pmts mo. 1-54 fully amortized in 54 equal installments | $215.41 | $215.41 | $215.41 | $215.41 | $215.41 | $215.41 | $215.41 | | $12,924.60 |
| | TOTAL SECURED | | $1,136,096.10 | $660,171.35 | | | | | | | | | | | $823,846.38 |
| | | | | | | Monthly Payments | $5,199.88 | $14,678.65 | $14,678.65 | $14,678.65 | $14,678.65 | $14,678.65 | $14,678.65 | | |
| | PRIORITY | | | | | | | | | | | | | | |
| 7 | Admin Class IRS WT-FICA (payroll taxes) | Priority | $388,571.66 | $388,571.66 | 8% | Pmts mo. 1-12 interest only. Pmts mo. 13-54 fully amortized in 42 equal installments | $2,590.48 | $2,590.48 | $10,637.92 | $10,637.92 | $10,637.92 | $10,637.92 | | | $477,878.40 |
| 7 | Admin Class IRS -Corp-Inc | Priority | $8,223.00 | 8,223.05 | 8% | Pmts mo. 1-12 interest only. Pmts mo. 13-54 fully amortized in 42 equal installments | $54.82 | $54.82 | $255.12 | $255.12 | $255.12 | $255.12 | | | $11,372.88 |
| 12 | Admin Class Comptroller of Public Accounts Franchise Tax 2023 & estimated 2024. Paying 2024 | Priority | $18,485.08 | 10,279.54 | 9.5% | Pmts mo. 1-54 fully amortized in equal installments | $234.68 | $234.68 | $234.68 | $234.68 | $234.68 | $234.68 | | | $12,672.72 |
| 13 | Admin Class Comptroller of Public Accounts - Sales Tax | Priority | $14,007.07 | 14,007.07 | 9.5% | Pmts mo. 1-54 fully amortized in equal installments | $319.78 | $319.78 | $319.78 | $319.78 | $319.78 | $319.78 | | | $17,268.12 |
| 2 & 16 | Admin Class Texas Workforce Commission | Priority | $8,534.21 | 8,534.21 | 9.5% | Pmts mo. 1-54 fully amortized in equal installments | $194.84 | $194.84 | $194.84 | $194.84 | $194.84 | $194.84 | | | $10,521.36 |
| | 401K Match Program- Employee Deductions | | | | | | | | | | | | | | |
| 4 | Class 3 Beverding, Jerome | Priority | $2,065.68 | 2,065.68 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $172.14 | $172.14 | | | | | | | $2,065.68 |
| | Class 3 Briley, John | Priority | | 1,571.54 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $130.96 | $130.96 | | | | | | | $1,571.54 |
| | Class 3 Cepress, Jerold | Priority | | 1,019.22 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $84.94 | $84.94 | | | | | | | $1,019.22 |
| | Class 3 Dinkins, James | Priority | | 856.24 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $71.35 | $71.35 | | | | | | | $856.24 |
| | Class 3 Flugel, Paul | Priority | | 489.14 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $40.76 | $40.76 | | | | | | | $489.14 |
| | Class 3 Hermosillo, Richard | Priority | | 1,813.52 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $151.13 | $151.13 | | | | | | | $1,813.52 |
| | Class 3 Papineau, Christina | Priority | | 568.15 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $47.35 | $47.35 | | | | | | | $568.15 |
| | Class 3 Pata, Kevin | Priority | | 900.06 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $75.01 | $75.01 | | | | | | | $900.06 |
| | Class 3 Quiring, Patrick | Priority | | 1,509.46 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $125.79 | $125.79 | | | | | | | $1,509.46 |
| | Class 3 Ramirez, Carlos | Priority | | 1,246.98 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $103.92 | $103.92 | | | | | | | $1,246.98 |
| | Class 3 Schreffler, Eric | Priority | | 801.91 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $66.83 | $66.83 | | | | | | | $801.91 |
| 5 | Class 3 Smith, Carla | Priority | 4,037.80 | 4,037.80 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $336.48 | $336.48 | | | | | | | $4,037.80 |
| | Class 3 Staudt, Jarrod | Priority | | 650.26 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $54.19 | $54.19 | | | | | | | $650.26 |
| | Class 3 Staudt, Samuel | Priority | | 1,429.85 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $119.15 | $119.15 | | | | | | | $1,429.85 |
| | TOTAL EMPLOYEE DEDUCTIONS | | | 18,959.81 | | | | | | | | | | | |
| | 401k Employer Match | | | | | | | | | | | | | | |
| 4 | Class 4 Beverding, Jerome | Priority | 1352.97 | 1,352.97 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $112.75 | $112.75 | | | | | | | $1,352.97 |
| | Class 4 Briley, John | Priority | | 1,047.71 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $87.31 | $87.31 | | | | | | | $1,047.71 |
| | Class 4 Cepress, Jerold | Priority | | 815.38 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $67.95 | $67.95 | | | | | | | $815.38 |
| | Class 4 Dinkins, James | Priority | | 856.24 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $71.35 | $71.35 | | | | | | | $856.24 |
| | Class 4 Flugel, Paul | Priority | | 489.14 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $40.76 | $40.76 | | | | | | | $489.14 |
| | Class 4 Hermosillo, Richard | Priority | | 621.38 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $51.78 | $51.78 | | | | | | | $621.38 |
| | Class 4 Papineau, Christina | Priority | | 454.52 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $37.88 | $37.88 | | | | | | | $454.52 |
| | Class 4 Pata, Kevin | Priority | | 900.00 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $75.00 | $75.00 | | | | | | | $900.00 |
| | Class 4 Quiring, Patrick | Priority | | 1,006.31 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $83.86 | $83.86 | | | | | | | $1,006.31 |
| | Class 4 Ramirez, Carlos | Priority | | 831.33 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $69.28 | $69.28 | | | | | | | $831.33 |

Exhibit 6

| | | | | | | | Chart of Claims and Scheduled Payments | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Secured and Priority Claims | | | | | | | | | |
| Proof of Claim | Creditor | Type | POC Amount | Plan Amount | Interest | Treatment | Payments 1-6 [6] | Payments 7-12 [6] | Payments 13-24 [12] | Payments 25-36 [12] | Payments 37-48 [12] | Payments 49-54 [6] | Payments 55-60 [6] | | | Total Payments |
| | Class 4 Schreffler, Eric | Priority | | 801.91 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $66.83 | $66.83 | | | | | | | | $801.91 |
| 5 | Class 4 Smith, Carla | Priority | 700.92 | 700.92 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $58.41 | $58.41 | | | | | | | | $700.92 |
| | Class 4 Staudt, Jarrod | Priority | | 650.26 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $54.19 | $54.19 | | | | | | | | $650.26 |
| | Class 4 Staudt, Samuel | Priority | | 953.26 | 0% | Paid in 12 equal installments. Pmts mo. 1-12 | $79.44 | $79.44 | | | | | | | | $953.26 |
| | TOTAL EMPLOYEE MATCH | | | 11,481.33 | | | | | | | | | | | | |
| | Pre-Petition Wages | | | | | | | | | | | | | | | |
| | Class 5 Flugel, Paul | Priority | | 3,423.80 | 0% | Paid in 12 equal installments. Pmts mo. 7-24 | $0.00 | $285.32 | $285.32 | | | | | | | $5,135.70 |
| | Class 5 Papineau, Christina | Priority | | 2,528.13 | 0% | Paid in 12 equal installments. Pmts mo. 7-24 | $0.00 | $210.68 | $210.68 | | | | | | | $3,792.20 |
| | Class 5 Pata, Kevin | Priority | | 11,786.24 | 0% | Paid in 12 equal installments. Pmts mo. 7-24 | $0.00 | $982.19 | $982.19 | | | | | | | $17,679.36 |
| | TOTAL PRE PETITION WAGES | | | 17,738.17 | | | | | | | | | | | | |
| | **TOTAL PRIORITY** | | **$486,000.38** | **$477,794.84** | | Monthly Payments | $5,931.36 | $7,409.54 | $13,120.52 | $11,642.34 | $11,642.34 | $11,642.34 | $0.00 | | | $586,761.88 |
| | Lease 5725 Hwy 290 W | | | | | | | | | | | | | | | |
| | Admin Class Commercial Lease/Base Rent plus expenses and attny fees months 1-6 $8083.00. Months 7-60 base rent plus expenses est $7200.00 | Admin | | | | | $8,083.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | | | |
| | | | | | | Monthly Payments | $8,083.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | $7,200.00 | | | $437,298.00 |
| | ADMINISTRATIVE CLAIMS-Attny Fees | | | | | | | | | | | | | | | |
| | Admin Class Lyon & Nash | Admin | | 36,000.00 | 0% | Paid in 6 equal installments. Payments 1-6 | $6,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | | $36,000.00 |
| | TOTAL ADMINISTRATIVE CLAIMS-Attny Fees | | | 36,000.00 | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | GENERAL UNSECURED CLAIMS | | | | | | | | | | | | | | | |
| | Class 7 General Unsecured Claims | | | 2,181,491.11 | 4.34% | Unsecured Payments | | | | | | | | | | $94,641.59 |
| | TOTAL GENERAL UNSECURED CLAIMS | | | 2,181,491.11 | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| | | | | | | Monthly Payments | $25,214.24 | $29,288.19 | $34,999.17 | $33,520.99 | $33,520.99 | $33,520.99 | $21,878.65 | | | |
| | | | | | | | | | | | | | | | | |

| Chart of Claims and Scheduled Payments | | | | | |
|---|---|---|---|---|---|
| **Class of General Unsecured** | | | | | |
| Proof of Claim # | Creditor | Type | Amount | Estimated % Pro Rata Share | Estimated Payment |
| | Alexander-Madison | | $54,000.00 | 4.34% | $2,343.60 |
| 6 | American Express | | $21,441.83 | 4.34% | $930.58 |
| | American Express | | $11,321.53 | 4.34% | $491.35 |
| | Bank United | | $468,000.74 | 4.34% | $20,311.23 |
| | Benjamin, Vanna, Martinez & Cano, LLP | | $2,240.50 | 4.34% | $97.24 |
| | Chase Card Services | | $14,679.83 | 4.34% | $637.10 |
| | Citibank N.A Diamond | | $21,363.53 | 4.34% | $927.18 |
| | Citibank N.A Simplicity | | $13,796.35 | 4.34% | $598.76 |
| | City of Austin | | $2,989.00 | 4.34% | $129.72 |
| 3 | Dell Financial | | $8,685.81 | 4.34% | $376.96 |
| | Discover | | $7,899.57 | 4.34% | $342.84 |
| | Elan Financial Services | | $16,942.06 | 4.34% | $735.29 |
| | G4 Geometric | | $5,273.00 | 4.34% | $228.85 |
| | Greybar | | $15,439.00 | 4.34% | $670.05 |
| 10 | LEAF Capital Funding, LLC | | $11,629.90 | 4.34% | $504.74 |
| | Internal Revenue Service | | 106,769.95 | 4.34% | $4,633.82 |
| | Mariott Bonvoy | | $18,970.15 | 4.34% | $823.30 |
| | Melton Norcross | | $2,500.00 | 4.34% | $108.50 |
| | Move Corp | | Disputed | 4.34% | |
| | Paul Flugel | | $13,000.00 | 4.34% | $564.20 |
| | Rudolf Pata | | Disputed | 4.34% | |
| | WEX Bank | | $45,000.00 | 4.34% | $1,953.00 |
| | **Creditors with unsecured UCCs** | | | | |
| 8 | Comerica Bank | | $1,036,534.84 | 4.34% | $44,985.61 |
| 1 | Essential Funding | | $22,413.52 | 4.34% | $972.75 |
| | Fenix Capital Funding, LLC | | $41,000.00 | 4.34% | $1,779.40 |
| | Fresh Funding Solutions | | $90,000.00 | 4.34% | $3,906.00 |
| 14 | Velocity Capital Group | | $129,600.00 | 4.34% | $5,624.64 |
| | | | | | |
| | | | | | |
| | | | | | |
| Total | | | $2,181,491.11 | | $94,676.71 |